IN THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Joshua Ellisor,<br><br>Plaintiff,<br><br>v.<br><br>Pit Stop Pub Inc.; The Burlington Insurance Company,<br><br>Defendants. | Case No. 5:26-cv-02038-SAC<br><br>**OPINION AND ORDER** |

This matter comes before the Court on a Motion to Remand filed by Plaintiff Joshua Ellisor ("Ellisor"). ECF No. 15. Defendant The Burlington Insurance Company ("Burlington"), filed a response in opposition, ECF No. 25, and Ellisor filed a reply, ECF No. 26. This Motion is accordingly ripe for review. For the reasons discussed below, the Court DENIES the Motion to Remand.

## BACKGROUND

On December 16, 2022, Ellisor filed suit in state court against Defendant Pit Stop Pub Inc. ("Pit Stop") for injuries he sustained during a shooting while a patron at Pit Stop (the "Underlying Lawsuit"). ECF No. 1-1 ¶¶ 6-7. At the time, Burlington insured Pit Stop. *Id.* ¶ 8. Ellisor alerted Burlington of the claim and lawsuit, but Burlington denied coverage based on the "Assault, Battery or Other Physical Altercation" exclusion in the insurance policy. *Id.* According to Ellisor, because of Burlington's denial of coverage, Pit Stop was left without coverage and counsel. *Id.* ¶ 9. Pit Stop then defaulted in the Underlying Lawsuit. *Id.* ¶ 9.

Ellisor filed his Complaint against Burlington and Pit Stop[1] in the Orangeburg County

[1] Pit Stop has not made an appearance, pled or otherwise defended Ellisor's claims. *See* ECF No. 29.

Court of Common Pleas on February 6, 2026, asking that court to determine whether Burlington's policy insuring Pit Stop affords liability coverage for Ellisor's injuries. ECF No. 1-1. Burlington removed the action on May 20, 2026. ECF No. 1. In its Notice of Removal, Burlington acknowledges that Pit Stop is incorporated in South Carolina and thus, like Ellisor, is a citizen of South Carolina. *Id.* ¶¶ 5-6. However, Burlington contends that Pit Stop's interests are aligned "entirely with the interests of [Ellisor], such that Pit Stop should be realigned with [Ellisor] as a party plaintiff for purposes of determining diversity of citizenship." *Id.* ¶ 7. On June 17, 2026, Plaintiff filed the instant Motion to Remand. ECF No. 15.

## STANDARD OF REVIEW

Because "[f]ederal courts are courts of limited jurisdiction," it is "presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006) ("The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper."). It is a "well-established principle that [the court is] obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated and that if federal jurisdiction is doubtful, a remand to state court is necessary." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 333-34 (4th Cir. 2008) (citation modified). A defendant may remove a case to federal court only if the federal court has original jurisdiction. *See* 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over civil cases based on federal questions or diversity of citizenship. *See* 28 U.S.C. §§ 1331; 1332(a). If a case before the court involves diversity of citizenship, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

To sustain diversity jurisdiction there must exist an 'actual,' *Helm v. Zarecor*, 222 U.S. 32, 36 (1911), 'substantial,' *Niles-Bement-Pond Co. v. Iron Moulders' Union Local 68*, 254 U.S. 77, 81 (1920), controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. *See Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 352-53 (4th Cir. 2020); *see also* 28 U.S.C. § 1332(a). "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69, (1941). The court must look beyond the pleadings and arrange the parties according to their sides in the dispute. *Id.* at 69. The Fourth Circuit applies the "principal purpose" test for determining whether realignment is appropriate. *Palisades Collections LLC*, 552 F.3d at 337. The principal purpose test has two steps. "First, the court must determine the primary issue in the controversy." *United States Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995). "Next, the court should align the parties according to their positions with respect to the primary issue." *Id.* If the alignment differs from that in the complaint, the court must then determine whether complete diversity exists. *See id.*

**ANALYSIS**

Ellisor's Motion is straightforward: Ellisor is a citizen of South Carolina and Pit Stop is incorporated in South Carolina, therefore, complete diversity does not exist. ECF No. 15 at 3. Ellisor asserts that because there is no diversity jurisdiction and no federal question, the action should be remanded to state court. *Id.* at 2-3. In its response, Burlington contends the sole claim for relief in the Complaint is a request for a declaration that Burlington's policy affords liability coverage for Ellisor's losses and Burlington is obligated to provide coverage and counsel for Pit Stop. ECF No. 25 at 8-13. Burlington continues that because Ellisor and Pit Stop would both

benefit from the finding that Burlington must provide coverage to and defend Pit Stop, they should be realigned for determining diversity in this action. *Id.* at 10-13. Ellisor counters that nothing in the record before the Court supports a finding that Pit Stop wants coverage afforded, as Pit Stop has not made an appearance; and, because no party contends the case involves an attempt to fraudulently manufacture diversity, the Court need not address the issue of realignment. ECF No. 26 at 1, 3.

Both sides agree that there is no federal question to confer the Court with jurisdiction, and neither dispute that the amount-in-controversy requirement is satisfied if complete diversity exists. *See generally* ECF Nos. 15; 25. The question before the Court, then, is whether Pit Stop should be realigned as a plaintiff party for the purposes of determining jurisdiction.[2]

Under the "principle purpose" test, the Court must align the parties according to their positions with respect to the primary issue. *United States Fid. & Guar. Co.*, 48 F.3d at 133. Accordingly, the Court must first determine the primary issue of this lawsuit. *Id.* Here, the primary issue in this declaratory judgment action is whether Burlington is obliged to provide coverage under its policy to Pit Stop for the claims asserted against it by Ellisor in the Underlying Lawsuit. ECF No. 1-1.

Next, the Court must align the parties according to the principle purpose. *United States*

[2] As an initial matter, Ellisor argues the Court need not even address the issue of realignment because there are no contentions of fraudulent manufactured diversity jurisdiction. ECF No. 26 at 3 (citing *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165 (4th Cir. 2018), *aff'd*, 587 U.S. 435 (2019)). However, the absence of such allegations does not foreclose the Court's consideration of realignment. *See Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d at 172-73. (explaining the realigning parties may extend beyond the traditional context of preventing parties from manipulating pleadings to manufacture federal jurisdiction where there is a compelling reason to do so). The concerns that justify extending realignment beyond its traditional application meant to prevent manufacturing jurisdiction are present here where Ellisor seeks to defeat federal jurisdiction. As discussed below, Ellisor does not make allegations against Pit Stop and his interests are so clearly aligned with Pit Stop that Pit Stop's inclusion should not defeat removal.

*Fid. & Guar. Co.*, 48 F.3d at 133. "In a declaratory judgment action involving an insurance company's policy coverage, the parties' interests are generally aligned based on whether they believe there is coverage of the damages that underlie the claims for insurance." *Fenwick Commons Homeowners Ass'n, Inc. v. Pa. Nat'l Mut. Cas. Ins.*, No. 2:19-cv-00057-DCN, 2019 WL 1760150, at *3 (D.S.C. Apr. 22, 2019) (realigning the insured defendants because they had the same interest in establishing that the policies issued to them by the insurer provided coverage for the claims brought against them in the underlying action). Here, Ellisor seeks a finding that the insurance policy Burlington issued covers the allegations and damages arising in the Underlying Lawsuit and Burlington has a duty to defend Pit Stop. Whereas Burlington seeks the opposite. It is difficult to see why, as Ellisor argues, Pit Stop would oppose having its liability covered by the policy and Burlington assuming its defense. ECF No. 26 at 2-3. As such, Pit Stop, as the insured, is aligned with Ellisor, as the injured party, on coverage issues. *See Crout v. United Fin. Cas. Co.*, No. 1:10-cv-00649-MBS, 2010 WL 2998500, at *2 (D.S.C. July 28, 2010) (realigning insured defendant with plaintiff in a declaratory judgment action seeking reformation of the insurance company's policy where defendant had an interest in the insurance company reforming the policy to cover a greater amount of damages); *Marsh v. Cincinnati Ins.*, No. 4:08-cv-02441-RBH, 2008 WL 4614289, at *2 (D.S.C. Oct. 15, 2008) (realigning defendants with the insured plaintiff in a declaratory judgment action seeking insurance coverage when the defendants had an interest in establishing that the plaintiff was covered by the insurance policy); *Miles v. Burlington Ins.*, No. 2:26-cv-01031-DCN, 2026 WL 1875778, at *4 (D.S.C. June 30, 2026) (same); *see also Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) (noting the "normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party.").

Moreover, there are no claims against Pit Stop in the Complaint, and Ellisor seeks no relief from Pit Stop. *See generally* ECF No. 1-1. In fact, Ellisor seeks relief on behalf of Pit Stop, asking the Court to declare Burlington "is obliged to provide coverage and counsel for Defendant Pit Stop." ECF No. 1-1 ¶ 13(b). There is simply nothing to indicate why Pit Stop would be named as a defendant in this action. Thus, it is clear that Pit Stop is not properly aligned as a defendant and must be realigned as a plaintiff. With Pit Stop realigned as a plaintiff, there is complete diversity between the parties, and the Court has jurisdiction.

Having determined realignment is appropriate, Ellisor's argument that removal was improper is unavailing. Ellisor argues that removal is improper because Burlington did not seek Pit Stop's consent prior to removing, as required under 28 U.S.C. §§ 1441(A) and 1446(2)(A),. "The Supreme Court has construed these statutes to require all defendants in the case to join in or consent to removal." *Hartford Fire Ins. v. Harleysville Mut. Ins.*, 736 F.3d 255, 259 (4th Cir. 2013). "However, federal courts have recognized exceptions to this requirement, such as through a realignment of defendants as plaintiffs." *Fenwick Commons Homeowners Ass'n*, 2019 WL 1760150, at *2 (collecting cases).

**CONCLUSION**

For the reasons discussed above, the Motion to Remand [ECF No. 15] is **DENIED**.

**IT IS SO ORDERED**.

United States District Judge

November 3, 2026
Columbia, South Carolina